UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FEDERAL DEPOSIT INSURANCE
CORPORATION as receiver for
CITIZENS STATE BANK,

    Plaintiff,

-vs-

Case No. 10-11061
Hon: AVERN COHN

SERGEI V. FEDOROV,
an individual,

    Defendant.

_____/

**MEMORANDUM AND ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

This is a contract case. Former plaintiff Citizens State Bank (Citizens), says that defendant Sergei Fedorov (Fedorov) failed to repay a $500,000 loan. Fedorov counterclaims alleging fraud. After it was substituted as the plaintiff in this case the Federal Deposit Insurance Corporation (FDIC), acting as receiver for Citizens, removed the case pursuant to 12 U.S.C. § 1819(b)(2)(B). FDIC's second amended complaint is in five counts:

    (I)    Breach of Promissory Note,

    (II)    Breach of Security Agreement,

    (III)    Breach of Agreement to Provide Insurance,

    (IV)    Claim and Delivery, and

(V) Fraudulent Misrepresentation.

Fedorov's counterclaim is in six counts:

(I) Fraud and Silent Fraud,

(II) Forgery,

(III) Negligent Misrepresentation,

(IV) "Innocent" Misrepresentation,

(V) Negligence, and

(VI) Violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1601.

Now before the Court is Fedorov's motion for summary judgment on grounds that his contractual obligations ended when the loan was paid in full and that he did not engage in fraud when he signed a security interest without owning an interest in the pledged collateral. For the reasons that follow, the motion will be denied.

## II. FACTS

### A. Background

Fedorov is a resident of the state of Florida. He is a professional hockey player who currently employed by a team in the Russian Professional League. Citizens was a Michigan banking institution located in New Buffalo, Michigan.

Beginning in 2001 Citizens began a relationship with Joseph Zada (Zada), a friend and business partner of Fedorov's. In 2002, Citizens began a lending relationship with Zada. Zada's business was solicited by Christopher Olzem (Olzem), a Citizens loan officer who had previously established a lending relationship with Zada while working as Community Central Bank. Citizens' senior loan officer, Douglas Dunkelberg (Dunkelberg), was also a former employee of Community Central Bank.

2

## B. Loan 19895

On March 3, 2004, Citizens loaned Fedorov $500,000. Fedorov signed a promissory note with a two-month maturity date.[1] The Disbursement Request and Authorization form states "The specific purpose of this loan is: Purchase 12-year old Oldenburg Gelding for the 2004 Olympic Grand Prix Jumping Trials." Fedorov signed a letter directing Citizens to disburse the proceeds of the loan to Zada. Fedorov also directed Citizens to send correspondence related to the loan to Zada's secretary.

In addition to the promissory note Citizens obtained a security interest in a horse. The Commercial Security Agreement describes the collateral as "a 12-year old Oldenburg Gelding and the assignment of major medical and major loss of use insurance in the amount of _____ on the 12-year old Oldenberg Gelding, policy number _____." Although Fedorov was the borrower on Loan 19895, both Fedorov and Zada signed the security agreement as a grantors. Fedorov and Zada also signed, as grantors, an Agreement to Provide Insurance with respect the collateral. While the parties agree on all of the facts described above, they assert a vastly divergent set of facts surrounding the loan.

### 1.

Fedorov asserts that he was merely a "straw man" used by Zada and Citizens's employees to increase Zada's credit beyond what was legally permitted. He asserts that both Zada and Citizens were aware that Zada was the true borrower and duped him into signing the loan agreement. He highlights the fact that Citizens' lending relationship with

---

[1] Fedorov testified that the signature on the promissory note appeared to be his, but does not recall signing the note. However, he has not challenged the authenticity of his signature in this motion.

3

Zada precedes Loan 19895 and that Zada had a preexisting relationship with both Olzem and Dunkelberg. He also asserts that Zada's relationship with Olzem and Dunkelberg was not merely a business relationship and included vacations to Zada's Florida home which were paid for by Zada. He says that Citizens was legally prohibited from lending additional funds to Zada, causing Zada and Citizens to identify third parties who would act as "straw borrowers" by taking out loans from Citizens while passing the proceeds on to Zada.

Fedorov admits that he was a friend of Zada's and was willing to help Zada when he requested Fedorov's assistance in obtaining a loan. Fedorov further admits that he signed the original loan documents, but was never aware that he was getting a loan.

As proof that Zada was the true recipient of the loan, Fedorov emphasizes that the proceeds of the loan were paid directly to Zada, that correspondence was sent to Zada's place of business, and that Zada made payments on the loan. He also references Citizen's documents which suggest that Loan 19895 was Zada's obligation. One document lists Loan 19895 among Zada's obligations, but designates Fedorov as the borrower. Another document required that Zada make aggregate payments on a series of obligations including Loan 19895 before authorizing an extension of another loan issued to Zada.

In sum, Fedorov admits that he was the nominal borrower on Loan 19895, but asserts that both Citizens and Zada knew that Zada was the true borrower. Once the loan was made, he says that both Zada and Citizens bank left him out of the transaction completely and treated Zada as the borrower. He asserts that he was a victim of a conspiracy between Zada and Citizens and never understood that he would have primary liability for a loan.

**2.**

In contrast, the FDIC says that Citizens always understood Fedorov to be the primary borrower of Loan 19895 and treated it as a separate and independent loan. While it admits that Citizens' relationship with Zada preceded its relationship with Fedorov, the FDIC asserts that Citizens conducted an independent analysis before loaning money to Fedorov. Specifically, Citizens obtained a copy of an NHL player contract providing Fedorov's income, a financial statement, and conducted a credit check which it relied upon in establishing that Fedorov had the wherewithal to repay the loan.

The FDIC admits that both the proceeds of Loan 19895 and most of the correspondence related to the loan were sent to Zada's office. However, it asserts that this was done at Fedorov's request. It provides a letter signed by Fedorov directing Citizens to disburse the loan proceeds to Zada. It asserts that Fedorov was a close friend of Zada and agreed to take out the loan to help Zada. It relies on Fedorov's testimony that he was willing to give Zada "whatever he was asking me" at the time the loan was made. It also asserts that any agreement between Zada and Fedorov was a personal matter between them and was distinct from Fedorov's obligation to Citizens. It also cites deposition testimony from Michelle Amato, an employee of Zada's, stating that due to Fedorov's demanding travel schedule, he directed important correspondence such as the loan information to Zada's office to ensure that it was received and processed in a timely manner. As a part of Zada's assistance to Fedorov, the FDIC admits that Zada made payments on Loan 19895; however, it relies on Zada's testimony that Fedorov reimbursed him for those payments.

In sum, the FDIC says that Citizens agreed to loan money to Fedorov and merely complied with his wishes with respect to both the disbursement and subsequent loan

5

correspondence. It asserts that any agreement between Fedorov and Zada whereby Zada would receive the loan proceeds was a private agreement between them and has no effect on Fedorov's obligation to Citizens.

### C. Modifications of Loan 19895

Loan number 19895 initially had a two-month term, but was not paid off at the end of that period. Instead, modifications extending the maturity date were executed on July 26, 2004; October 29, 2004; and November 24, 2004. A final undated modification extended the maturity date to March 3, 2005. When the loan remained unpaid, Citizens issued a new loan: Loan 21442. The proceeds of Loan 21442 were used to pay off Loan 19895. Unlike Loan 19895, Loan 21442 had a term of 59 months and required both interest and principle payments. Although all of the documents bear Fedorov's signature, the parties stipulated that his signature was forged on each of the modifications of Loan number 19895 as well as the promissory note, security agreement, and insurance agreement for Loan number 21442. The required payments on Loan 21442 were not made; it was deemed by Citizens to be in default. Again, the parties have vastly divergent explanations for the modifications as well as the forged signatures.

Fedorov asserts that he played no role in the modification process and was unaware that the original loan had been modified or that a new loan was issued. Relying on Olzem's inability to remember sending loan closing packets to Zada, Fedorov suggests that his name was forged by a Citizens employee and that Citizens was responsible for the forgery. He also asserts that Loan 41442 was a completely new loan which paid off Loan 19895 in full. As a result, he says that any obligation related to Loan 19895 was released when loan was paid off. He notes that Citizens has failed to produce the loan documents for Loan

19895 and suggests that this is because it turned the documents over to Zada after the loan was paid off.

In contrast, the FDIC relies on Zada's testimony that he and Fedorov discussed both the loan modifications as well as the new loan prior to taking any action. Thus it asserts that, even if his signatures were forged, Fedorov was an active participant in the modification process. Even if Fedorov's signature was forged, the FDIC says that Citizens played no role in the forgery. The FDIC also asserts that Loan 21442 was not technically a new loan, but was a modification of Loan 19895. Because the loan was "termed out" by increasing the duration to 59 months, the FDIC says that it was administratively expedient to process the modification as a new loan. While the loan number changed and Loan 19895 was technically paid off, the FDIC says that this was merely a clerical matter. It further relies on Zada's testimony that both Zada and Fedorov viewed the new loan as a modification of the original loan.

### III.  THE LAW

Summary judgment is appropriate when the evidence submitted shows that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A party claiming relief may move, with or without supporting affidavits, for summary judgment on all or part of the claim." Fed. R. Civ. P. 56(a). Accordingly, the movant bears the initial responsibility of informing the court of the basis for its motion, and identifying what it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When a motion for summary judgment is properly made and supported, an opposing party must set out specific facts showing a genuine issue for

trial. Fed. R. Civ. P. 56(e). All facts and inferences should be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970).

## IV. ANALYSIS

### A. The Law

### 1. Breach of Contract

Any contract – including a promissory note, security agreement, or agreement to provide insurance – is not valid unless the following five elements have been met: "(1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." Thomas v. Leja, 187 Mich. App. 418, 422 (1991) (citing Detroit Trust Co v. Struggles, 289 Mich. 595 (1939). To prevail on a breach of contract claim under Michigan law, a plaintiff must prove the following elements: "(1) the existence of a contract between the parties, (2) the terms of the contract require performance of certain actions, (3) a party breached the contract, and (4) the breach caused the other party injury." Burton v. William Beaumont Hospital, 373 F. Supp. 2d 707, 718 (E.D. Mich. 2005) (citing Webster v. Edward D. Jones & Co., 197 F.3d 815, 819 (6th Cir. 1999).

Forgery is an effective defense to a breach of contract claim. E.g., Carpenter v. Camp, 52 Mich. 375, 379 (1884). When a party asserts that its signature on a contractual document was forged, the defense does not depend upon whether or not the terms of the contract were breached. Instead, the party asserts that the contract is void due to a lack of mutuality of agreement. A party who establishes that a contract is based on a forgery

is entitled to have the contract voided. When the contract is an independent agreement, the effect of voiding the contract is straightforward. However, the effect of voiding a forged contract becomes complicated when parties executed a series of contracts and the forged contract was a substitute for an otherwise valid pre-existing contract.

While a party to a contract has a right to require a counter-party to perform in accordance with the terms of a contract, it can also voluntary discharge a counter-party's obligations. MICH COMP. LAWS § 440.3604(1) states:

> A person entitled to enforce an instrument, with or without consideration, may discharge the obligation of a party to pay the instrument (I) by an intentional and voluntary act, such as surrender of the instrument to the party, destruction, mutilation, or cancellation of the instrument, cancellation of striking out of the party's signature, or the addition of words to the instrument seeking discharge or (ii) by agreeing not to sue or otherwise renouncing rights against the party by a signed writing..

Further, a party's underlying motivation in discharging an obligation is not relevant. McDonald v. Loomis, 233 Mich. 184, 183-84 (1925) ("The purpose or intent of the holder beyond intent to destroy his evidence of indebtedness is immaterial.")

However, a party's decision to discharge an obligation must be both intentional and voluntary. While there is no authority from Michigan courts addressing the requirements for intentional and voluntary discharges in a similar factual situation, other states have addressed the issue under similar statutes. A Colorado court held that a party could enforce a discharged note if the discharge was accomplished unintentionally, without the authority of the holder, or through fraud. Ohio Casualty Insurance Co. v. Yaklich, 768 P.2d 1274, 1275 (Colo. Ct. App. 1989). In Ohio Casualty, the FDIC was permitted to recover under a promissory note after a defendant entered into a "straw man" loan for a friend who

9

had reached his borrowing limit and then had the loan discharged by the bank president even though no payments were made. Id. In a similar fashion a Kentucky court held that a debtor could not avoid payment of a promissory note that was discharged due to a forged signature on a loan consolidation agreement. Citizens Fidelity Bank & Trust Co. v. Stark, 431 S.W.2d 722 (Ky. Ct. App. 1968). In this case, defendants owed loans to three different banks along with co-debtors. The co-debtors sought to consolidate the three loans and forged the defendants signatures on the consolidated loans. Defendants claimed that their signatures were forged and denied any liability on the consolidated debt. Id. at 723. They asserted that they should escape liability entirely even though they had not paid the original debt because the bank knew that they had not consented to the new loan. Id. The court disagreed and treated the consolidating bank as a transferee of the original debt. Id. at 724. The court found that the mere fact that the original loan was marked as "paid" did not remove the defendants liability under the loan:

> It is our opinion that the action of [plaintiff] in surrendering the original notes to Davis after having permitted them to be marked 'Paid' by Liberty and First National did not operate to discharge the indebtedness of [defendants] nor to release the collateral that had been pledged to secure the indebtedness. This is so because the cancellation and surrender of the original notes were the result of fraud.

Id.

These cases provide a framework for assessing the liability of a debtor who's loan is marked as "paid" through fraud. First, Ohio Casualty makes clear that a debtor who participates in the fraud cannot avoid liability for his debt, even if a lender's agents also participates. Second, Citizens Fidelity Bank suggests that even an innocent debtor remains liable for a debt marked as "paid" if the lender was equally unaware of a fraud committed

10

by a third party. Taken together, they suggest that a debtor can avoid liability only when he is innocent of any wrongdoing and the lender is a knowing participant in the fraud.

## 2. Fraud

The elements of a fraud claim include (1) a material misrepresentation; (2) that is false; (3) that defendant made knowing it to be false or that it made recklessly without any knowledge of its truth and as a positive assertion; (4) with the intent that it be acted on by the plaintiff; (5) that was acted upon by the plaintiff; and (6) resulted in the plaintiff's injury. Clement-Rowe v. Michigan Health Care Corp., 212 Mich. App. 503, 507 (1995) (citation omitted). To establish fraud, reliance on the alleged misrepresentation must be reasonable. Foreman v. Foreman, 266 Mich. App. 132, 141-42 (2005).

## B. Analysis

## 1. Breach of Contract

Fedorov asserts that he is entitled to summary judgment on the FDIC's claim of breach of contract due to (1) a failure of legal consideration, (2) a failure of mutuality of agreement, and (3) full payment of the debt underlying the promissory note. Fedorov does not explicitly address the fact that the FDIC has raised three contract claims for breach of promissory note, security agreement, and agreement to provide insurance. However, his claims apply equally to all three agreements. As a result, the Court will address them together.

**a.**

Fedorov asserts a failure of legal consideration on the basis that the proceeds of Loan 19895 were paid to Zada and that he personally received nothing from Citizens. "Courts generally do not inquire into the adequacy of consideration to support a contract," and even a "cent or a peppercorn, in legal estimation," would suffice. General Motors Corp. v. Department of Treasury, 466 Mich. 231, 239 (2002). In this case, Fedorov does not dispute that Citizens disbursed $500,000 to Zada. Further, he has not challenged the authenticity of his signature on the letter directing Citizens to disburse the loan proceeds in that manner. Regardless of the actual recipient, this establishes that Citizens disbursed $500,000 according to Fedorov's wishes. This is sufficient consideration. Fedorov's reliance on Thomas v. Leja, 187 Mich. App. 418 (1991) is misplaced. In that case, the promissory note was void for lack of consideration because the bank never disbursed funds at all, id. at 420; here funds were disbursed to a third-party beneficiary at Fedorov's request.

**b.**

Fedorov asserts that there was no mutuality of agreement because he never requested that Citizens loan him money and was never informed that Citizens considered him to be a borrower. However, Fedorov does not deny that he signed the loan documents after having an opportunity to review them. Under Michigan law, "[o]ne who signs a contract cannot seek to avoid it on the basis that he did not read it or that he supposed that it was different in its terms." Nieves v. Bell Industries, Inc., 204 Mich. App. 459, 463 (1994). Given his opportunity to study the loan documents and understand their terms, Fedorov cannot avoid liability on the basis that he failed to appreciate the nature of the documents

12

that he signed.

**c.**

Finally, Fedorov asserts that he cannot be liable for breach of contract because Loan 19895 was fully paid off. He asserts that when Citizens issued Loan 21442 it paid off Loan 19895, leaving him with no further obligation under Loan 19895. He notes that his signature was forged on the documents related to Loan 21442 and speculates that "[t]he forgeries were either created by a [Citizens] employee or Zada." He cites the maxim that "[w]hen one of two innocent persons must suffer through the acts of a third, the loss must be borne by the person who enables such third person to perpetrate or occasion the fraud." North Detroit Land Co. v. Rominiecki, 257 Mich. 239, 243 (1932). Fedorov asserts that by sending all of the loan correspondence to Zada and failing to communicate directly with him, Citizens was at least negligent in allowing the forgeries to occur. As a result, he says that any harm caused by the forgeries should fall on Citizens rather than him.

Despite Fedorov's assertions, there are a number of unresolved factual disputes that preclude summary judgment. When the disputed facts are resolved in the FDIC's favor, a reasonable jury could conclude that Citizens was neither a direct participant in forging Fedorov's signature nor negligent in allowing the forgeries to occur.

There is no dispute that Loan 19895 was "paid off" with proceeds the proceeds of Loan 21442 and that Fedorov's signature was forged on all relevant documents related to Loan 21442. This is not a simple case where Citizens decided to forgive Fedorov's loan, but a case where Loan 19895 was effectively replaced by Loan 21442. Regardless of whether the replacement was merely clerical, there is no dispute that Loan 19895 was not intentionally and voluntarily forgiven as an independent act. Instead, it was marked as paid

13

off in reliance on the legal force of Loan 21442 which was subsequently determined to be forged. The impact of the forgery cannot be determined without assessing the responsibility for the forgery. As described above, if Citizens was an innocent party it is entitled to have Loan 19895 reinstated, regardless of whether Fedorov participated in the fraud or not. However, Citizens was involved in the fraud and Fedorov was an innocent party, then he may be freed entirely of his obligations under the loan.

When the facts are construed in a light favorable to the FDIC, a reasonable juror could find that Citizens was not involved in forging Fedorov's signature. Fedorov's speculation that a Citizens employee forged his signature is based solely on Olzem's testimony that he did not remember whether he gave the loan closing packages to Zada. This is irrelevant to the question of who forged Fedorov's signature and is also insufficient to establish that Zada did not receive the loan closing packages. It is certainly possible that Olzem or another Citizens employee forged Fedorov's signature on the loan modifications. However, it is equally possible that Zada forged Fedorov's signature, especially in light of Zada's testimony that he discussed the terms of the loan modifications with Fedorov and obtained Fedorov's concurrence. Because disputes must be resolved in the FDIC's favor at this stage of the case, the Court will assume for purposes of the motion that Zada was responsible for forging Fedorov's name.

Fedorov further asserts that if Zada was responsible for forging Fedorov's signature, he was acting as Citizens' agent. He bases this assertion on what he considers a conspiracy between Zada, Olzem, and Dunkelberg to increase Zada's credit through straw borrowers. Again, it is just as reasonable to believe that Citizens was innocent and that Zada was acting as Fedorov's agent, whether with actual or implied authority. When

14

Fedorov obtained Loan 19895 he directed Citizens to disburse the funds to Zada and also had loan correspondence sent to Zada's place of business. Therefore, it was Fedorov's decision to place Zada at the center of the relationship between himself and the bank. It would certainly be reasonable for a jury to conclude that any interaction that the bank had with Zada in reference to Fedorov's loans were the result of Fedorov's decision to make Zada his agent, at least in an implied fashion, and not due to a conspiracy between Zada and Citizens. Regardless of whether Zada signed Fedorov's signature with his knowledge and authorization or Zada acted independently and without actual authority, Citizens would not have acted inappropriately by sending loan closing packages to Zada's place of business and relying on the authenticity of the signatures when the loan closing packages were returned.

With the disputed facts resolved in the FDIC's favor, a reasonable jury could conclude that Citizens played no role in forging Fedorov's signature on the loan modification documents. As a legal matter, the forged agreements are void and would have to be unwound, placing Citizens and Fedorov in the same position they would have been in absent the modifications. Citizens marked Loan 19895 as paid based on its belief that Loan 21442 was a substitute and that Fedorov remained obligated to the it in the amount of $500,000. Because Loan 19895 was technically paid off with the proceeds from Loan 21442, that payment should be unwound along with Loan 21442. Unless the payment is unwound and Fedorov's obligations under Loan 19895 are reinstated, Fedorov would receive a windfall of $500,000 at Citizens' expense. Because Fedorov's arguments with respect to breach of promissory note, breach of security agreement, breach of agreement to provide insurance, and claim and delivery are all based on the fact that he

was no longer obligated under Loan 19895, his motion must be denied on Counts I-IV.

## 2. Fraud

Fedorov asserts that he is entitled to summary judgment with respect to the FDIC's claim of fraudulent misrepresentation because it would have been unreasonable for the bank to believe that he held title to the horse listed as collateral for the loan. Fedorov says that the bank knew that the purpose of the loan was to purchase the horse, that the money was disbursed directly to Zada, and that Zada was a co-grantor of the security agreement. Based on these facts, Fedorov asserts that the bank should have known that Fedorov did not own the horse prior to signing the security agreement.

The FDIC asserts that the security agreement clearly states that a horse was to serve as collateral and that would apply to the referenced horse "whether now owned or hereafter acquired." It further asserts that Fedorov never possessed an interest in the referenced horse and never had any intent to do so.

The loan documents make clear that Fedorov was not required to have an interest in the referenced horse prior to signing the security agreement. It was intended to apply regardless of whether the horse was already owned or would be purchased with the loan proceeds. As a result, Fedorov's assertion is without merit. However, The FDIC is also incorrect when it asserts that Fedorov was required to possess an interest in the referenced horse. Fedorov and Zada were co-grantors of the security agreement and Citizens was aware that the loan proceeds were to be distributed to Zada. If the referenced horse was purchased by Zada rather than Fedorov, the transaction would not have been fraudulent. However, Fedorov has presented no evidence to support the assertion that the referenced horse was purchased or that he or Zada had any intention of purchasing the referenced

horse.

## V. Conclusion

For the reasons stated above, Fedorov's motion for summary judgment is DENIED. There are genuine issues of material fact related to the forgery of Fedorov's signature on loan documents as well as Fedorov's ownership of pledged collateral which can only be resolved by trial.

SO ORDERED.

                                            s/Avern Cohn
                                            AVERN COHN
                                            UNITED STATES DISTRICT JUDGE

Dated: July 22, 2010

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, July 22, 2010, by electronic and/or ordinary mail.

                                            s/Julie Owens
                                            Case Manager, (313) 234-5160